IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br>ROBERTO DIAZ BURGOS<br>Defendant | CRIM. NO. 17-079 (CCC) |
|---|---|



**PLEA AGREEMENT**
(Pursuant to Rule 11(c)(1)(B) FRCP)

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff, the United States of America, by and through its attorneys, Rosa Emilia Rodríguez-Vélez, United States Attorney for the District of Puerto Rico, José Capó-Iriarte, Assistant United States Attorney, Chief Criminal Division, Marshal D. Morgan, Assistant United States Attorney, Deputy Chief of Crimes Against Children and Human Trafficking Unit, Evelyn Canals, Assistant United States Attorney for said District, and Roberto Diaz Burgos, Defendant, by and through Defendant's counsel, José A. Arce, Esq., pursuant to Rule 11(c)(1)(A) & (B) of the Federal Rules of Criminal Procedure, and state to this Honorable Court, that they have reached an agreement, the terms and conditions of which are as follows:

1. **DEFENDANT PLEADS GUILTY TO 8 U.S.C. § 1326(b)(2)**

Defendant agrees to plead guilty to an Indictment which charges that Defendant, being an alien previously deported from the United States, did intentionally and knowingly attempt to enter the United States, without obtaining, prior to his re-embarkation at a place outside the United States, the express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, pursuant to Title 6, *United States Code*, Sections 202(3), 202(4) and 557, to reapply for admission into the United States. The aforementioned offense was committed after the defendant was previously removed following the

3

conviction for an aggravated felony. All in violation of Title 8, *United States Code*, Section 1326(a)(2)(b)(2).

## 2. MAXIMUM PENALTIES

The maximum penalties for the offense to which Defendant is pleading guilty is a term of imprisonment of not more than twenty (20) years, a fine not greater than two hundred fifty thousand dollars ($250,000.00), and a term of supervised release of no more than three (3) years.

## 3. APPLICABILITY OF SENTENCING GUIDELINES

Pursuant to the decision of the Supreme Court of the United States in the case of *United States v. Booker* and *United States v. Fanfan*, the Sentencing Guidelines are no longer mandatory and must be considered effectively advisory.

## 4. SPECIAL MONETARY ASSESSMENT

Defendant shall pay a special monetary assessment of one-hundred dollars ($100.00), as required by Title 18, *United States Code*, Section 3013(a).




## 5. FINES

Defendant is aware that the Court may order Defendant to pay a fine sufficient to reimburse the government for the costs of any imprisonment, probation or supervised release.

## 6. RULE 11(c)(1)(B) WARNINGS

Defendant's sentence is within the sound discretion of the sentencing judge and will be imposed in accordance with the Guidelines (including the <u>Guidelines Policy Statements, Application, and Background Notes</u>). The Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which he pleads guilty. If the Court should impose a sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw the guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

7. **SENTENCING GUIDELINE CALCULATIONS AND SENTENCE RECOMMENDATION**

Although the Guidelines are advisory, the sentencing court is required to consider the Guideline "sentencing range established for ...the applicable category of offense committed by the applicable category of defendant" in imposing sentence. *United States v. Booker*, 543 U.S. 220, 224 (2005). Therefore, after due consideration of the relevant factors enumerated in Title 18, *United States Code*, Section 3553(a), the United States and Defendant submit the below advisory Sentencing Guideline calculations. The parties also agree that the U.S. Probation Office will determine all applicable sentencing guideline calculations, including any enhancements, because they are in a better position to accurately determine Defendant's prior conviction history. However, the parties reserve their right to oppose such determination should they deem it incorrect.

| 2016 UNITED STATES SENTENCING GUIDELINES CALCULATION TABLE < COUNT ONE > 8 U.S.C. § 1326(a)(2)(b)(2) | | |
|---|---|---|
| Base Offense Level [§ 2L1.2(a)] | Defendant unlawfully entered or remained in the U.S. illegally | +8 |
| Specific Offense Characteristics [§2L1.2.(b)(1)(A)] | Prior to instant offense, defendant had a prior felony conviction, for an illegal reentry offense. | +4 |
| Specific Offense Characteristics [§ 2L1.2(b)(3)(B)] | Defendant was previously convicted of a felony offense, sentence was at least two years | +8 |
| Adjustment [§ 3E1.1(a)&(b)] | Defendant timely accepted responsibility and offense level is 16 or higher | -3 |
| TOTAL OFFENSE LEVEL | | 17 |

| Sentencing Ranges | TOL | CHC I | CHC II | CHIII | CHIV | CHV | CHVI |
|---|---|---|---|---|---|---|---|
| | 17 | 024-030 | 027-033 | 030-037 | 037-046 | 046-057 | 051-063 |

3

**Sentencing Recommendation.** The United States and the Defendant agree to recommend to the Court a sentence of confinement at the lower end of the applicable sentencing guideline range.

8. **WAIVER OF APPEAL**

Defendant knowingly and voluntarily agrees that, if the sentence imposed by the Court is within or below the guideline range for the total offense level calculated in this plea agreement when combined with the defendant's criminal history category as determined by the Court, the defendant waives the right to appeal any aspect of this case's judgment and sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

9. **SURRENDER TO CUSTODY**

In consideration of receiving this plea agreement, the Defendant agrees that, if released from pretrial detention at any time while criminal proceedings in the case are pending, the Defendant will surrender himself to authorities at the change of plea hearing, will withdraw his request for bail and refrain from making further requests, and will remain incarcerated through sentencing. The Defendant agrees this is reasonable based on the fact that he has no legal status in this country, is pleading to a criminal violation of the Immigration and Nationality Act, and will likely be removed from the United States upon completion of his sentence.

10. **NO FURTHER ADJUSTMENTS OR DEPARTURES**

The United States and Defendant agree that no further adjustments or departures to Defendant's base offense level shall be sought by the parties.

11. **NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY**

The parties make no stipulation as to Defendant's Criminal History Category.

## 12. IMPACT UPON IMMIGRATION STATUS

Defendant is an alien. Defendant acknowledges that pleading guilty and entering into this plea may have negative effects upon Defendant's immigration status with the United States.

## 13. SATISFACTION WITH ATTORNEY

Defendant is satisfied with Defendant's counsel, José A. Arce, Esq., Defendant hereby indicates that counsel has rendered effective legal assistance.

## 14. RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

Defendant understands that by entering into this agreement, Defendant surrenders certain rights as provided in this agreement, which include the following:





a) If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree;

b) If a jury trial is conducted, the jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately;

c) If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt;

d) At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court;

e) At trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilty could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

**15. STIPULATION OF FACTS**



The parties agree that there is a sufficient basis in fact to support Defendant's guilty plea in this case. The parties further agree that the facts contained in the attached government's version of facts are true and correct, and that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

**16. JURISDICTIONAL LIMITS OF PLEA AGREEMENT**



This plea agreement does not extend to or bind other federal districts, federal civil and/or tax authorities, and/or State or Commonwealth of Puerto Rico tax authorities, civil and/or State or Commonwealth of Puerto Rico law enforcement authorities.

**17. ENTIRETY OF PLEA AGREEMENTS AND AMENDMENTS**

This document constitutes the entire plea agreement between the parties. The parties deny the existence of any other terms and conditions not stated herein. No additional promises, terms or conditions will be entered unless in writing and signed by all parties.

**18. VOLUNTARINESS OF PLEA**

Defendant is entering into this plea agreement without compulsion, threats, or any other promises from the United States Attorney or any of his agents. No threats have been made against Defendant. Defendant is pleading guilty freely and voluntarily because Defendant is, in fact, guilty.

## 19. BREACH AND WAIVER

Defendant understands and agrees that if Defendant breaches the Plea Agreement, Defendant may be prosecuted and sentenced for all of the offenses that Defendant may have committed. Defendant agrees that if Defendant breaches this Plea Agreement, the government reserves the right to take whatever steps are necessary to nullify the Plea Agreement, including the filing of a motion to withdraw the Plea Agreement and/or set aside the conviction and sentence. Defendant also agrees that if he is in breach of this Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the indictment, information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

Defendant further agrees that if he is in breach of this Plea Agreement, Defendant is deemed to have also waived any objection to the filing of any additional charges against him.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney

_____
José Capó-Iriarte,
Assistant U.S. Attorney
Chief, Criminal Division
Date: 6/30/17

_____
Marshal D. Morgan
Assistant U.S. Attorney
Deputy Chief, Crimes Against Children
and Human Trafficking Unit
Date: 6/30/17

_____
Evelyn Canals
Assistant U.S. Attorney
Date: 6/30/17

_____
Roberto Diaz Burgos
Defendant
Date: July 5, 2017

_____
José A. Arce, Esq.
Counsel for Defendant
Date: July 5, 2017

I have consulted with my counsel and fully understand all my rights with respect to the Information pending against me. Further, I have consulted with my attorney and fully understand my decision to enter a guilty plea in this instant case. In addition, I understand my rights with respect to the provision of the <u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u> which may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the plea agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and I voluntarily agree to it.

Date: July 5, 2017

Roberto Diaz Burgos
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights with respect to the pending Information against Defendant. Further, I have reviewed the provisions of the <u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u>, and I have fully explained to Defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part this Plea Agreement with Defendant. I have translated the plea agreement and explained it in the Spanish language to the defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this agreement voluntarily, intelligently and with full knowledge of all the consequences of Defendant's plea of guilty.

Date: July 5, 2017

José A. Arce, Esq.
Counsel for Defendant

# GOVERNMENT'S VERSION OF THE FACTS

Investigation by the deponent reveals that defendant; Roberto Diaz-Burgos, attempted to Re- Enter the United States after being removed from the United States.

On January 23, 2017 at approximately 12:49 AM, the Office of Air and Marine Air asset contacted the United States Coast Guard (USCG) to inform they had sighted a suspicious vessel northwest of Aguadilla, PR, with several visible occupants, traveling southeast towards Puerto Rico. A United States Coast Guard (USCG) Cutter was vectored to position and was able to locate and intercept the vessel approximately thirty (30) nautical miles northwest from the coast of Aguadilla, PR. On board the vessel, thirty seven (37) subjects claimed to be undocumented aliens, thirty two (32) from the Dominican Republic, and three (3) from Haiti and two (2) from Cuba. According to the US Coast Guard, the group claimed to have departed from the Dominican Republic, and were enroute to Puerto Rico, USA for safety reasons, all subjects were transferred to the USCG Cutter.



At the Cutter, all subjects' fingerprints were entered into the biometrics system. Biometrics revealed that Diaz-Burgos and three (3) other migrants had previous immigration and/or criminal history. The U.S. Border Patrol Ramey Station was informed and arrangements were made to coordinate investigation and custody transfer of the detained illegal migrants who met the Caribbean Border Interagency Group (CBIG) prosecutions guidelines.

On January 25, 2017, at approximately 5:00 PM, Border Patrol Agents were dispatched to meet with the USCG Cutter at the Mayaguez, PR Port of Entry. Upon arrival at the Mayaguez Port of Ently, the agents identified themselves as Border Patrol Agents and interviewed the detained individuals as to their citizenship and nationality. All individuals, including DIAZ-Burgos, admitted to be citizens and nationals of the Dominican Republic. All of them stated that they did not have immigration documents to enter or remain in the United States legally.

Diaz-Burgos, along with three (3) additional subjects, were arrested and transported to the Ramey Border Patrol Station for further investigation and processing.

At the Ramey Station, the subjects photograph and fingerprints were taken and entered to the NGI System and subsequent record checks were conducted to include but not limited to CIS, NCIC, TECS, NGI and EARM. Record checks revealed that Diaz-Burgos had previous criminal and immigration history. On December 9, 1999, he was issued an order of removal by Immigration Judge. Formally removed on July 7, 2006. On September 12, 2013, he was arrested and his prior order of removal was reinstated. Formally removed on November 19, 2014. On March 4, 1996, he was convicted of armed robbery. On July 30, 2014, he was convicted of 1326(a) and Title 18 Section 1028 (A), Aggravated Identity Theft. Border Patrol Agents advised Diaz-Burgos of his right to legal representation as per Miranda Warnings. In addition, he was advised of his right to speak with the Consul of his native country, the Dominican Republic.

DIAZ-Burgos attempted to re-enter into the United States at a place other than a designated port of entry he does not have any immigration documents allowing him to enter and/or remain in the United States legally and was not inspected, admitted or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

He does not have any petitions pending with the Bureau of Citizenship and Immigration Services.

_____
Evelyn Canals
Assistant U.S. Attorney
Date: July 3, 2017

_____
Roberto Diaz Burgos
Defendant
Date: July 5, 2017

_____
José A. Arce, Esq.,
Counsel for Defendant
Date: July 5, 2017

10